UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-cv-21581-ALTMAN

TOLIFE TECHNOLOGIES PTY LTD, *et al.*,

    *Plaintiffs*,

v.

THE INDIVIDUALS, CORPORATIONS,
LIMITED LIABILITY COMPANIES,
PARTNERSHIPS, AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON
SCHEDULE A,

    *Defendants*.

_____/

## ORDER GRANTING IN PART MOTION FOR DEFAULT FINAL JUDGMENT

The Plaintiffs have moved for entry of default final judgment. *See* Motion for Default Final Judgment [ECF No. 46]. The Plaintiffs obtained a clerk's entry of default as to all the Defendants listed in Schedule A, *see* Clerk's Entry of Default [ECF No. 44], who've been properly served, *see* Returns of Service [ECF No. 22], but nevertheless haven't answered or responded to the Complaint [ECF No. 1], *see generally* Docket. After careful consideration of the Motion, the record in this case, and the applicable law, we **GRANT in part** the Motion as to all Defendants against whom the Plaintiffs haven't voluntarily dismissed this action. *See* Notices of Voluntary Dismissal [ECF Nos. 21, 35, 39, 40, 42, 47].

### BACKGROUND

On this default judgment posture, we draw the facts of this case from the Complaint, the Motion, and the various supporting evidentiary submissions and exhibits. Plaintiff ToLife is the registered owner of the ToLife Trademark, which is covered by U.S. Trademark Registration No. 5,993,261 (the "V-COMB Trademark"), and Plaintiff Maor is the registered owner of the design

patent, Patent No. D858,877 S (the "V-COMB Patent"), which is valid and registered on the Principal Register of the United States Patent and Trademark Office (collectively, the "V-COMB IP"). Maor also owns all exclusive rights in the patent for Plaintiffs' ToLife Products (as defined in Plaintiffs' Complaint).

The Plaintiffs allege that the Defendants, through e-commerce stores operating under the seller aliases identified on Schedule A to the Complaint and attached hereto (the "Store Names"), have advertised, promoted, offered for sale, sold, or imported goods using counterfeits, infringements, reproductions, or colorable imitations of the V-COMB IP. *See* Declaration of Moshe Maor [ECF No. 10-1] ("Maor Decl.") ¶¶ 9–17. According to the Plaintiffs, the Defendants aren't licensed or authorized to use any of the V-COMB IP, and none of the Defendants are authorized retailers of genuine V-COMB products. *See id.* ¶¶ 17, 21.

The Plaintiffs investigated the promotion and sale of infringing and counterfeit versions of its branded products by Defendants. *See id.* ¶ 12–16. Plaintiffs accessed each of the e-commerce stores operating under the Store Names and determined that Counterfeit Products were being offered for sale to residents of the United States. *Ibid.* In addition, each e-commerce store offered shipping to the United States. *Ibid.* The Plaintiffs reviewed and visually inspected the products using infringing and counterfeit versions of the V-COMB IP, and determined that those products were non-genuine, unauthorized versions of Plaintiffs' products. *Ibid.*

On April 4, 2025, the Plaintiffs filed their Complaint against the Defendants for federal trademark infringement and counterfeiting and false designation of origin. *See generally* Complaint. On April 17, 2025, the Plaintiffs filed an *ex parte* Motion for Entry of a Temporary Restraining Order. We granted the Plaintiffs a temporary restraining order, Order Granting *Ex Parte* Temporary Restraining Order [ECF No. 12], and held a hearing on their request for a preliminary injunction on June 10, 2025, Paperless Hearing Minutes [ECF No. 28]. In the interim, the Plaintiffs timely served all of the

Defendants. *See* Returns of Service. Although all the Defendants were served, none of them appeared to litigate this action. *See generally* Docket. This Motion followed.

**STANDARD**

Under Federal Rule of Civil Procedure 55(b)(2), we may enter a final default judgment against any party who has failed to respond to the complaint. A defaulting defendant "admits the plaintiffs' well-pleaded allegations of fact." *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987). But "a defendant's default does not in itself warrant the court entering a default judgment. There must be a sufficient [factual and legal] basis in the pleadings for the judgment entered." *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *see also Buchanan*, 820 F.2d at 361 ("[L]iability is well-pled in the complaint and is therefore established by the entry of default."). "If the admitted facts are sufficient to establish liability, then the Court must ascertain the appropriate amount of damages." *Malletier v. Individuals, Bus. Entities, or Unincorporated Assocs.*, 2024 WL 4372102, at *2 (S.D. Fla. Jan. 26, 2024) (Middlebrooks, J.) (citing *Nishimatsu Constr. Co.*, 515 F.2d at 1206). "Where all the essential evidence to determine damages is on the paper record, an evidentiary hearing on damages is not required." *Ibid.* (citing *SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005)).

**ANALYSIS**

### I.   Jurisdiction and Venue

We have subject-matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338. We have personal jurisdiction over the Defendants because they direct their infringement towards consumers in this District and because that infringement impacts the Plaintiffs' business here. For the same reasons, venue exists in this District.

## II.        Liability

The Plaintiffs plead two counts: *first*, trademark infringement under Lanham Act § 32 (15 U.S.C. § 1114), *see* Compl. ¶¶ 47–53 (Count I); and *second*, design patent infringement under 35 U.S.C. § 271, *see id.* ¶¶ 54–60 (Count II). They're entitled to default judgment on both counts.

### a.   *Lanham Act § 32 Trademark Infringement*

"Under § 32(a) of the Lanham Act, . . . liability for trademark infringement occurs when a person 'use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark' which 'is likely to cause confusion, or to cause mistake, or to deceive.'" *PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1217 (S.D. Fla. 2004) (Cohn, J.) (quoting 15 U.S.C. § 1114). "Thus, to prevail on a trademark infringement claim[,] a plaintiff must demonstrate that (1) its mark has priority, (2) defendant used its mark in commerce, and (3) defendant's mark is likely to cause consumer confusion." *Ibid.* (citing *Int'l Cosmetics Exch., Inc. v. Gapardis Health & Beauty, Inc.*, 303 F.3d 1242 (11th Cir. 2002) and *Frehling Enters., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999)).

As set forth in the Complaint and other supporting evidence and exhibits, the Plaintiffs own the V-COMB Trademark and devised it first, but the Defendants have nevertheless been advertising and selling goods that copy (or incorporate exact or very similar copies of) the V-COMB Trademark. They've been doing so on the Internet, just as the Plaintiffs would. Obviously, because the Defendants' goods copy or incorporate exact or very similar copies of the V-COMB Trademark, and because they're sold in the same way, those goods are confusingly similar to the V-COMB Trademark and are likely to cause consumer confusion. We therefore grant judgment for the Plaintiffs on their trademark-infringement count, Count I.

### b. *Design Patent Infringement*

A design patent is infringed when, "during the term of a patent for a design, without license of the owner" a defendant "(1) applies the patented design, or any colorable imitation thereof, to any article of manufacture for the purpose of sale, or (2) sells or exposes for sale any article of manufacture to which such design or colorable imitation has been applied." *XYZ Corp. v. Individuals, P'ships, and Unincorporated Ass'ns Identified on Schedule A*, 668 F. Supp. 3d 1268, 1273 (S.D. Fla. 2023) (Bloom, J.) (quoting 35 U.S.C. § 289). "Determining whether a design patent is infringed is a two-step process. First, when appropriate, the design patent's claims are construed. Second, the patented design is compared to the accused device." *Pride Family Brands, Inc. v. Carl's Patio, Inc.*, 992 F. Supp. 2d 1214, 1223–24 (S.D. Fla. 2014) (Seitz, J.). "The 'ordinary observer' test is the sole test for determining whether a design patent has been infringed." *Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*, 942 F.3d 1119, 1129 (Fed. Cir. 2019) (citing *Egyptian Goddess, Inc. v. Swisa, Inc.,* 543 F.3d 665, 678 (Fed. Cir. 2008)). Under this test, "if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." *Gorham Mfg. Co. v. White*, 81 U.S. 511, 528 (1871). "Minor differences between a patented design and an accused article's design cannot, and shall not, prevent a finding of infringement." *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010) (quoting *Payless Shoesource, Inc. v. Reebok Int'l Ltd.*, 998 F.2d 985, 991 (Fed. Cir. 1993) (cleaned up)). And, because "[d]esign patents are typically claimed as shown in drawings," *Crocs, Inc.*, 598 F.3d at 1302, we may assess what the ordinary observer would perceive by simply visually comparing the claimed designs to the accused products, *id.* at 1304–06 ("The proper comparison requires a side-by-side view of the drawings of the '789 patent design and the accused products.").

As set forth in the Complaint and other supporting evidence and exhibits, the Plaintiffs claim that they own the V-COMB Patent, that the V-COMB Patent is valid, and that the Defendants are selling products that would deceive an ordinary observer into purchasing the Defendants' products, falsely believing them to be the Plaintiffs' products practicing or implementing the V-COMB Patent. On comparison of the V-COMB Patent to the infringing products presented in the voluminous exhibits attached to the Motion and the Complaint, we agree. We therefore grant judgment for the Plaintiffs on their design-patent-infringement count, Count II.

### III.     Remedies

#### a.   *Permanent Injunctive Relief*

The Lanham Act authorizes us to issue a permanent injunction to prevent violations of trademark law. 15 U.S.C. § 1116(a). Permanent injunctive relief is available even in the default-judgment context. *PetMed Express, Inc.*, 336 F. Supp. 2d at 1222. It's appropriate where a plaintiff demonstrates that (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 392–93 (2006). We granted the preliminary injunction in this matter because, on our review of the record, all the factors weighed in favor of the Plaintiffs. *See* Order Granting Motion for Preliminary Injunction [ECF No. 42] at 3–4. Nothing has changed since then—if anything, the case for issuing an injunction has become stronger. *First*, by selling products that infringe the V-COMB IP, the Defendants have inflicted irreparable damage on the Plaintiffs. *See McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1310 (11th Cir. 1998) ("[A] sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of . . . [a] substantial threat of irreparable harm."); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 986 (11th Cir. 1995) ("There is no doubt that the continued sale of thousands of pairs of counterfeit jeans would damage LS & CO's business reputation and decrease its legitimate

sales."). *Second*, there's no adequate remedy at law because the Defendants' failure to respond or otherwise appear in this action makes it practically impossible for the Plaintiffs to prevent further infringement absent an injunction. *Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) ("[D]efendant's lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease. Therefore, plaintiff is entitled to permanent injunctive relief."). *Third*, the Defendants' default has left us with absolutely no reason to conclude that whatever hardship they might face in having to comply with the law outweighs the thoroughly documented harm inflicted on the Plaintiffs' reputation and control over their own IP. *Fourth*, "an injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior." *Chanel, Inc. v. besumart.com*, 240 F. Supp. 3d 1283, 1291 (S.D. Fla. 2016) (Altonaga, J.).

Because the Plaintiffs have carried its burden on each of the four factors, they're entitled to permanent injunctive relief.

        b.   *Statutory Damages*

           i.   Damages for Lanham Act Trademark Infringement (Count I)

The Lanham Act also authorizes us to award the Plaintiffs statutory damages (at their request, and in lieu of actual damages) for the Defendants' trademark infringement. *See* 15 U.S.C. § 1117(c). When we determine that the infringement is willful, we may impose statutory damages up to "$2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as [we] consider just." 15 U.S.C. § 1117(c)(2).

The Plaintiffs request statutory damages. Mot. at 16–17. As we explained above, we granted judgment for the Plaintiffs on their Lanham Act infringement count because the Defendants are infringing the Plaintiffs' trademark. The Plaintiffs allege that the Defendants' infringement is willful. Compl. ¶¶ 45, 50. Even setting aside that we must accept that allegation as true, we've reviewed the entire record before us—all the filed documents, as well as the Defendants' conspicuous absence and

default—and see no basis on which we could conclude that the infringement *isn't* willful. *Accord Arista*

*Records, Inc. v. Beker Enters., Inc.*, 298 F. Supp. 2d 1310, 1313 (S.D. Fla. 2003) (Cohn, J.) ("[T]his Court

may infer that Defendants willfully infringed Plaintiffs' copyrights because of Defendants' default.").

We therefore conclude that the Plaintiffs are entitled to statutory damages up to $2,000,000 per

Defendant per counterfeit mark per type of good infringed.

But exactly how much should we award in damages? Because the unrebutted allegations of the

Complaint indicate that each Defendant willfully infringed the V-COMB Trademark with respect to

at least one type of good, Compl. ¶¶ 47–53, the Plaintiffs seek an award of $200,000 per Defendant,

Mot. at 16. In construing other statutory damages provisions closely analogous to the one in the

Lanham Act, the Eleventh Circuit has explained that we have very "broad discretion" to select an

award "within [the] set limits" of the "statutory yardstick," "consider[ing] both the willfulness of the

defendant's conduct and the deterrent value of the sanction imposed." *Cable/Home Commc'n Corp. v.*

*Network Prods., Inc.*, 902 F.2d 829, 852 (11th Cir. 1990) (collecting cases); *compare* 17 U.S.C. § 504(c)

("[A]n infringer of copyright is liable for either the copyright owner's actual damages . . . ; or statutory

damages[.] . . . [T]he copyright owner may elect, at any time before final judgment is rendered, to

recover, instead of actual damages and profits, an award of statutory damages for all infringements,"

and "[i]n a case where the copyright owner sustains the burden of proving, and the court finds, that

infringement was committed willfully, the court in its discretion may increase the award of statutory

damages[.]"), *and* 47 U.S.C. §§ 605(e)(3)(C)(i)–(ii) ("Damages awarded by any court under this section

[of the Communications Act] shall be computed, at the election of the aggrieved party, . . . [either as]

actual damages . . . ; or . . . statutory damages[,]" and "in any case in which the court finds that the

violation was committed willfully . . . the court in its discretion may increase the award of damages,

whether actual or statutory[.]"), *with* 15 U.S.C. § 1117(c) ("In a case involving the use of a counterfeit

mark . . . the plaintiff may elect, at any time before final judgment is rendered . . . to recover, instead

of actual damages . . . an award of statutory damages," and "if the court finds that the use of the counterfeit mark was willful [it may increase the award to] not more than $2,000,000 per counterfeit mark per type of goods of services sold . . . as the court considers just[.]"). Other courts in our District have drawn the same comparisons. *E.g.*, *Malletier*, 2024 WL 4372102, at \*5; *see also Louis Vuitton Malletier and Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 583 (E.D. Pa. 2002) ("In the absence of clear guidelines for setting a statutory damage award, courts have tended to use their wide discretion to compensate plaintiffs, as well as to deter and punish defendants, often borrowing from factors developed in fixing a statutory damage award for copyright infringement.") (collecting cases).

Noting that the Defendants willfully infringed and that other courts in our District have approved the deterrent effect of awards of $1,000,000, we agree with the Plaintiffs that an award of $200,000 per Defendant in this case is appropriate and just. *Accord, e.g.*, *Chanel, Inc. v. E8bag.ru*, 2017 WL 6947460, at \*6 (S.D. Fla. June 12, 2017) (Bloom, J.) ("Based on the above considerations, Plaintiff suggests the Court award statutory damages of $1,000,000.00 against Defendant. The award should be sufficient to deter Defendant and others from continuing to counterfeit or otherwise infringe Plaintiff's trademarks, compensate Plaintiff, and punish Defendant, all stated goals of 15 U.S.C. § 1117(c)."); *see also YIP, LLC v. Individuals Identified on Sched. "A"*, 2022 WL 3566883, at \*7 (S.D. Fla. June 10, 2022) (Hunt, Mag. J.) (collecting cases in which we awarded $1,000,000 in statutory damages per Defendant), *report and recommendation adopted*, 2022 WL 2712540 (S.D. Fla. July 13, 2022) (Altman, J.); Mot. at 19 n.5 (collecting cases). It's not lost on us that $200,000 per Defendant is an eyebrow-raising figure—potentially greater than each Defendant's ill-gotten gains—but it's within the "statutory yardstick," and, after due deliberation, we conclude that an award in that sum serves the dual statutory purposes of compensation *and* deterrence.

ii.   Damages for Design-Patent Infringement (Count II)

As a remedy for design-patent infringement, a design patentee may seek damages under *either* § 284 (which applies to all patents) *or* § 289 (which applies only to design patents). Under § 284, any patentee (including any design patentee) may recover damages at least equivalent to "a reasonable royalty for the use made of the invention by the infringer, together with interests and costs." 35 U.S.C. § 284. When the infringement is egregious, we may enhance these damages "up to three times the amount found or assessed." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 106 (2016) ("Section 284 permits district courts to exercise their discretion in a manner free from [ ] inelastic constraints . . . . Consistent with nearly two centuries of enhanced damages under patent law, however, such punishment should generally be reserved for egregious cases typified by willful misconduct."). In contrast, under § 289, a design patentee may recover damages equivalent to the infringer's "total profit, but not less than $250." 35 U.S.C. § 289.

The design patentee's choice between these two statutory remedies is emphatically disjunctive. "When only a design patent is at issue, a patentee *may not* recover *both* infringer profits *and* additional damages under § 284." *Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1291 (Fed. Cir. 2002) (emphasis added).[1] Moreover, "[t]he profits recoverable under Section 289 do not constitute 'damages' that may be increased up to three times under Section 284." *Braun Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815, 824 & n.17 (Fed. Cir. 1992) (cleaned up).[2] That's because § 289 prescribes that a design patentee "shall not twice recover the profit made from the infringement." 35 U.S.C. § 289; *accord Henry*

---

[1] Issues "particular to patent law" should be analyzed under Federal Circuit law. *See, e.g.*, *Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1323 (Fed. Cir. 2008). The meaning of the Patent Act is obviously an issue "particular to patent law."

[2] *Braun* reasoned that § 284 and § 289 remedies were mutually exclusive because of the ostensible "longstanding distinction in patent law between damages and profits." *Braun, Inc.*, 975 F.2d at 824 & n.17. Although the Federal Circuit later retreated from that reasoning, *see Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1445 (Fed. Cir. 1998) ("[T]he decision in *Braun* was based not on drawing a rigorous distinction between 'damages' and 'profits,' but on the [no-double-recovery] provision of § 289[.]"), it has never retreated from *Braun*'s holding that § 289 damages can't be enhanced under § 284.

*Hanger & Display Fixture Corp. of Am. v. Sel-O-Rak Corp.*, 270 F.2d 635, 643–44 (5th Cir. 1959) ("If the statutory measure of compensatory damages is to be found in 35 U.S.C.A. 289, a royalty in addition to profits should not have been awarded since the profit was in excess of the minimum as fixed by that section. So also under 35 U.S.C.A. § 284[.]").[3] Indeed, even when a defendant's conduct constitutes infringement of *both* a utility patent *and* a design patent, the plaintiff "is entitled to damages for each infringement, but once it receives profits under § 289 for each sale, [the plaintiff] is not entitled to a further recovery from the same sale because the award of infringer profits under § 289 also constitutes 'damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer.'" *Catalina Lighting, Inc.*, 295 F.3d at 1291 (quoting 35 U.S.C. § 284).

The Plaintiffs seek a § 289 remedy against all the Defendants, *see* Mot. at 20–25, but we won't give them the full amount of damages they request. According to the Plaintiffs, the "known total profits" of 121 of the 131 non-dismissed Defendants were less than $750. *Id.* at 20 & n.6. As to each of those Defendants, the Plaintiffs ask us to award $750—the $250 statutory minimum, trebled for willfulness. *Ibid.* But that trebling request is flatly foreclosed by the text of the statute and the Federal Circuit's holding in *Braun*. Remember, "only a design patent is at issue" here. *Catalina Lighting, Inc.*, 295 F.3d at 1291; *see also* Compl. ¶¶ 54–60. The text of § 289 doesn't authorize us to treble (or otherwise enhance) infringer profits in a case like this one. *Braun Inc.*, 975 F.2d at 824 & n.17. Nor does it authorize us to award separate royalty damages on top of those profits. *See Catalina Lighting, Inc.*, 295 F.3d at 1291. As to the 121 Defendants from whom the Plaintiffs seek $750 apiece, then, we'll award the Plaintiffs just $250 apiece. Although the Plaintiffs didn't point to any evidence about those

---

[3] "All decisions of the former Fifth Circuit announced before October 1, 1981, are binding precedent in the Eleventh Circuit." *Roman v. United States*, 789 F. App'x 211, 212 (11th Cir. 2019) (citing *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc)).

Defendants' actual total profits, they *did* establish that those Defendants were liable for infringing the V-COMB Patent. The Plaintiffs are therefore entitled to the statutory minimum—nothing more.[4]

The Plaintiffs fare similarly against the ten remaining Defendants—they're entitled to a third of what they're asking for. They were able to obtain revenue information about each of those Defendants from certain Third-Party Providers,[5] which allowed them to offer us a specific estimate of lost profits. Usually, § 289 involves a two-step analysis: "First, [courts] identify the 'article of manufacture' to which the infringed design has been applied. Second, [courts] calculate the infringer's total profit made on that article of manufacture." *Samsung Elecs. Co. v. Apple, Inc.*, 580 U.S. 53, 58 (2016). The plaintiff has the initial burden to show the article of manufacture and the defendant's total profit on that article. *See Evriholder Prods. LLC v. Simply LBS Ltd. Co.*, 2020 WL 7060336, at *9 (S.D.N.Y. Apr. 21, 2020) ("[A]fter a plaintiff in a patent action submits admissible evidence of an infringer's gross profit . . . it is the infringer's burden to submit admissible evidence to establish that other expenses and costs should be deducted from that profit." (citing *Nordock, Inc. v. Sys., Inc.*, 2017 WL 5633114, at *3 (E.D. Wisc. Nov. 21, 2017) (collecting cases))). The defendant then has the burden to produce evidence as to any deductions from the total profit identified by the plaintiff (or to show the article of manufacture, if it believes it to be different). *Ibid.*

In cases where a defendant fails to produce documents elucidating revenue, though, there are two important ways in which we can act more freely. *First*, we may resolve any uncertainty about the

---

[4] We note with some chagrin that our case isn't the first time that Plaintiffs' counsel has moved a court in our District to improperly treble (or otherwise enhance) § 289 damages. *See Believe Pursue LLC v. Schedule A*, 2025 WL 2427675, at *12 (S.D. Fla. July 29, 2025) (Elfenbein, Mag. J.) ("Plaintiff's request to treble the GMV figure under § 284 is procedurally improper. Treble damages under § 284 apply only to compensatory damages, such as Plaintiff's lost profits or reasonable royalties. They do not apply to recovery of Defendant's profits under § 289."). And, troublingly, the Motion doesn't offer *any* justification for why we should disregard the Federal Circuit's holdings. If the Plaintiffs or their attorneys believe that the Federal Circuit is wrong, they must at least try to tell us why. They must not, however, blithely ignore governing authority (not to mention the plain text of the statute) and hope that we don't notice simply because of the posture of this case.

[5] As that term is defined in our Order Granting Motion for Preliminary Injunction.

infringer's profits against the infringer. *See, e.g.*, *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 206-07 (1942) ("The burden is the infringer's to prove that his infringement had no cash value in sales made by him. If he does not do so, the profits made on sales of goods bearing the infringing mark properly belong to the owner"); *see also Sara Lee Corp. v. Bags of N.Y., Inc.*, 36 F. Supp. 2d 161, 169 (S.D.N.Y. 1999) (citing *Lous Vuitton S.A. v. Spencer Handbags Corp.*, 765 F.2d 966 (2d Cir. 1985) (holding that, where defendants failed to meet their burden regarding profit calculation, a court could adopt plaintiff's proposed calculation)); *Chloe v. Zarafshan*, 2009 WL 2956827, at *5 (S.D.N.Y. Sept. 15, 2009) (awarding an infringer's entire revenue and noting that "the court may resolve any doubts against the defendant in calculating profits, particularly if the uncertainty is due to the defendant's inadequate record keeping or failure to produce documentary evidence" (cleaned up)).

*Second*, we may treat the entirety of a reported (or discovered) revenue amount as the defendant's "total profit" under § 289, even if we don't (and likely can't) know for certain how much of that revenue comes from infringement. *See, e.g.*, *Chloe*, 2009 WL 2956827, at *5 (entering profits award for the entire revenue amount even though "records offer no guidance as to how much of this revenue stream related to [Plaintiff's] products (as opposed to other products not at issue in this case) or as to the costs incurred in acquiring and selling these products"); *N.Y. Racing Ass'n, Inc. v. Stroup News Agency Corp.*, 920 F. Supp. 295, 301 (N.D.N.Y. 1996) (calculating lost profits based on gross figures where defendant offered no evidence of cost of goods sold) (citing *Am. Honda Motor Co. v. Two Wheel Corp.*, 918 F.2d 1060, 1063 (2d Cir. 1990) ("Ordinarily, a plaintiff that has proved the amount of infringing sales would be entitled to that amount unless the defendant adequately proved the amount of costs to be deducted from it.")); *WMS Gaming, Inc. v. WPC Prods. Ltd.*, 542 F.3d 601, 608 (7th Cir. 2008) (placing the burden on the defendant to show that certain parts of its revenues were not obtained through infringement of the plaintiff's marks).

Bearing in mind these liberties, we think the Plaintiffs are entitled to recover the lost profits they specify against each of the ten remaining Defendants. Once again, we'll infer willfulness from the Defendants' default. And, because the Defendants defaulted, they waived any argument they might have made on the proper computation of patent damages. The Plaintiffs propose that we compute their lost profits by trebling the "Gross Merchant Value" they obtained in discovery for each Defendant, which they say is the "sales price of infringing goods multiplied by the number of goods sold." Mot. at 24; *see also* Salomon Declaration Exhibit 2 [ECF No. 46-22] (listing each patent infringed by each Defendant, the Gross Merchant Value known for each Defendant, and the trebled Gross Merchant Value). Again, we decline to treble these § 289 profits—but we otherwise think the Plaintiffs' proposal is reasonable. *Cf. Kyjen Co., LLC*, 2025 WL 1433614, at *6 (awarding damages for design-patent infringement based on Gross Merchant Value).

iii.  Limitations on Damages Awards

The Plaintiffs pled both of their claims against all the Defendants on Schedule A. Even so, in the Motion and the Proposed Amended Schedule A attached to the Plaintiff's Proposed Default Final Judgment [ECF No. 46-24], the Plaintiffs request that we limit the damages we award against certain Defendants. We'll take the Plaintiffs' request at face value and award them only the amounts and kinds of damages they request (subject to the reductions in this Order); for each claim against each Defendant for which the Plaintiff declined to request an award of damages in the Proposed Amended Schedule A, we'll treat that claim (and the corresponding damages request) as waived. But, for the reasons set forth above, we'll issue a permanent injunction against *all* the Defendants.

\*       \*       \*

14

After careful consideration, we hereby **ORDER and ADJUDGE** as follows:

1.  The Plaintiff's Motion for Default Final Judgment [ECF No. 46] is **GRANTED in part**.

2.  The Court will separately enter a Default Final Judgment.

3.  This case shall remain **CLOSED**.

**DONE AND ORDERED** in the Southern District of Florida on October 3, 2025.

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:      counsel of record

15